## 34458. HAMMETT v. REYNOLDS.

HILL, Justice.

Clarice Huie Reynolds named her nephew Manley Huie Hammett as executor in her will, executed February 14, 1975. The 1975 will was substantially the same as a previous will executed in 1973. In both she left her husband, William H. Reynolds, $5,000 in cash and all of her household furniture for as long as he lived in their home; made a number of specific bequests of jewelry and cash in sums of $5,000 and $10,000 to various relatives, a godchild, a former pastor's son, and several charitable organizations;[1] and devised the rest, remainder and residue of her estate to her nephew Hammett. Testatrix died in March, 1977.

Hammett offered his aunt's 1975 will for probate in solemn form in the Probate Court of Clayton County, Georgia. The widower filed a caveat to his wife's will on the grounds of mental incapacity, undue influence, mistake of fact as to the conduct of her sole heir at law, and monomania as to the caveator. The probate judge found against the caveator and ordered that letters testamentary issue to the nephew. The widower then appealed to the superior court.

The nephew proved that the will was freely and voluntarily executed by the testatrix with the formalities required by law and that at the time she apparently had sufficient mental capacity to make a will.

The widower offered evidence showing that his deceased wife mistakenly believed that he had had affairs with other women. He contends that this belief constituted monomania and mistake of fact as to the conduct of an heir at law. No evidence of lack of mental capacity to make a will or of undue influence was introduced. The jury was charged as to the contentions of the parties; as to the burden of proof on the propounder; as to the meaning of testamentary capacity, monomania, and mistake of fact; that the propounder could not prevail

---

[1]The differences in the wills are in the specific bequests of jewelry.

if the will were not signed, attested, published and declared according to law; and that the jury should find in favor of that party the jury concluded should prevail. The jury was not instructed that the burden of proof of monomania or mistake of fact was on the caveator. The jury found in favor of the caveator. The propounder moved for a new trial, which motion was overruled, and he appeals.

1. In *Irvin v. Askew,* 241 Ga. 565, 566 (246 SE2d 682) (1978), quoting 1 Redfearn, Wills and Administration in Georgia § 42 (3d Ed. 1965), this court described monomania as follows: "Monomania means a mental disease, not merely the unreasonable conduct of a sane person. Monomania is partial insanity; . . . The monomaniac is subject to *hallucinations and insane delusions* as to one or a few subjects and yet is perfectly rational as to others; . . . Monomania is a diseased condition of the mind and is distinguished from ill will, bad judgment, animosity, prejudice, erroneous conclusions from facts, illogical views, and other conditions of mind which can be co-existent with sanity . . ." (Emphasis supplied and deleted.) In *Whitfield v. Pitts,* 205 Ga. 259, 272 (53 SE2d 549) (1949), the court ruled that: "A showing of hallucinations or insane delusions is essential to proving monomania. *Bohler v. Hicks,* 120 Ga. 800, 804 (48 SE 306); *Dibble v. Currier,* 142 Ga. 855 (83 SE 949, Ann. Cas. 1916C, 1); *Stephens v. Bonner,* 174 Ga. 128 (162 SE 383)."

As stated in *Bohler v. Hicks,* supra, 120 Ga. at 804-806: "A delusion such as will deprive one of testamentary capacity must be an insane delusion. An insane delusion . . . exist[s] wherever a person conceives something extravagant to exist which has no existence whatever, and he is incapable of being permanently reasoned out of that conception . . . The delusion must spring up spontaneously in the mind of the person, and not be the result of evidence of any kind . . . An insane delusion does not mean a mistaken conclusion from a given state of facts, nor a mistaken belief as to the existence of facts . . . The subject-matter of an insane delusion must have no foundation in fact and must spring from a diseased condition of the intellect. If the testator

undertakes to make an investigation and arrives at the conclusion that a certain state of facts exists which in point of fact does not exist, such conclusion may be attributable either to a mistake in judgment or a mistake of fact, and will not be evidence of insanity . . . Mere jealous suspicion, however groundless, does not amount to delusional insanity." In *Bohler,* supra, it was held that the testator's belief that his wife had been intimate with another did not amount to an insane delusion so as to constitute monomania.

We find that under the facts presented in this case the jury was not authorized to set aside the testatrix' will on the ground of monomania and thus the verdict cannot be sustained on this ground.

Moreover, there was no evidence in this case to support the claim of undue influence, or of lack of mental capacity to make a will. *Yuzamas v. Yuzamas,* 241 Ga. 577 (247 SE2d 73) (1978); *Irvin v. Askew,* supra. In fact, the only ground of the caveat arguably supported by evidence was mistake of fact as to the conduct of the widower. In this connection it should be noted that a will can be set aside for mistake of fact arising from ignorance, but not from an error in judgment after an investigation or after wilful failure to investigate. *Young v. Mallory,* 110 Ga. 10, 12 (35 SE 278) (1899).

In a will contest, where the caveat consists of four or more grounds, and the trial court instructs the jury as to the contentions of the parties and that the contentions form the issues to be tried, and instructs the jury as to the burden of proof on the propounder[2] but fails to instruct the jury that the burden of proof is on the caveator as to the grounds of the caveat, and where only one of the grounds

---

[2]Regarding the propounder's burden of proof as to mental capacity and voluntariness, Justice Bleckley demonstrated the uniqueness of wills cases when he wrote: "The truth is, that what the propounders have to carry, on the score of sanity and freedom, is more in the nature of ballast than of cargo. It is just burden enough to sail with—no more." *Thompson v. Davitte,* 59 Ga. 472, 475 (1877).

of the caveat is supported by evidence, it is error to overrule propounder's motion for new trial. *Freeman v. Hamilton,* 74 Ga. 317 (1884); *Woodson v. Holmes,* 117 Ga. 19 (2, 3) (43 SE 467) (1903).

2. The nephew enumerates three errors which relate to certain real property which the testatrix had inherited from her mother. The widower was allowed to testify over objection that the nephew's father (testatrix' brother-in-law), as either executor or administrator of testatrix' mother's estate, had attempted to eliminate testatrix' interest in the property for $400, that as testatrix' attorney (prior to their marriage) the widower had thwarted this attempted swindle, and that the property later was sold for $200,000. He was also allowed to testify over objection that he had paid the ad valorem taxes on the property during their marriage. At the widower's request the trial court charged the jury, "I charge you that where the probate of a will is contested for incapacity of the maker, the source from which the property disposed of by will came into the decedent's possession may be shown." The nephew objected to this charge.

Regarding the charge, it was not adjusted to the case at hand because caveator offered no evidence contesting the capacity of the maker to make a will. The testatrix' mental capacity to make a will was not a jury issue in this case. *Yuzamas v. Yuzamas,* supra; *Irvin v. Askew,* supra.

The widower argues that his testimony about his activity as an attorney on behalf of testatrix was admissible under *Murphy v. Murphy,* 152 Ga. 275 (109 SE 903) (1921). *Murphy* states the rule that where a will is contested for incapacity of the maker, the source of the property may be shown. As applied in this case, however, that rule would favor the propounder because it would allow evidence that testatrix acquired the property through her mother's estate. *Murphy v. Murphy,* supra; *Cook v. Sheats,* 222 Ga. 70 (4) (148 SE2d 382) (1966). Because the widower's testimony as to his involvement as her attorney was both irrelevant and prejudicial in this particular case, the failure to sustain that objection requires reversal. On the other hand, the fact that the widower paid the taxes on the property in question, like

evidence as to the source of the property, is admissible to show the reasonableness or unreasonableness of the testatrix' disposition of it. *Murphy v. Murphy,* supra.

3. The nephew also enumerates as error the trial court's granting of the widower's motion in limine, on which the court ruled that the nephew's attorney could not, in his opening statement, refer to the fact that the probate court had found the will to be valid. Without approving the sixth (6th) headnote in *Baucum v. Harper,* 176 Ga. 296 (6) (168 SE 27) (1933), regarding the charge of the court, we find no error in the ruling made as to the opening statement of counsel.

4. The remaining enumerations of error are directed to evidentiary matters which are not likely to reoccur upon retrial and to charge of the court. In view of the fact that the charge was not objected to at trial on the remaining grounds enumerated, we will not reach those enumerations.

*Judgment reversed. All the Justices concur.*

Argued January 16, 1979 — Decided May 30, 1979.

*Jones, Cork, Miller & Benton, Wallace Miller, Jr., Hutcheson & Kilpatrick, Lee Hutcheson,* for appellant.

*Joseph R. Baker,* for appellee.

