S95A1428, S95X1429. BONEY v. BONEY; and vice versa.
(462 SE2d 725)

HUNSTEIN, Justice.

Mary Boney, the widow of Walter Boney, petitioned to probate the decedent's December 1979 will, in which she was named executor and sole beneficiary of the estate. Wimbric Boney, the decedent's adopted son, filed a caveat to the will, alleging that the will was the product of the decedent's monomania. The basis for this allegation stemmed from a November 1979 incident from which the testator had developed the insane delusion that he and the propounder had been insulted when the caveator's family had departed his home after refusing to eat food prepared by the propounder. A jury found in favor of Wimbric Boney and judgment was entered denying probate of the will. Mary Boney appeals from the judgment; Wimbric Boney cross-appeals, contingent upon reversal and remand for a new trial, from an evidentiary ruling made by the trial court. Because the evidence adduced did not authorize the jury to set aside the will for monomania, the trial court erred by denying the propounder's motion for a directed verdict and the judgment is reversed. The caveator's cross-appeal is dismissed as moot.

1. Monomania is a mental disease which leaves the sufferer sane generally but insane on a particular subject or class of subjects. *Johnson v. Dodgen*, 244 Ga. 422 (1) (260 SE2d 332) (1979). "The very name 'monomania' implies partial insanity and excludes the idea of any sort of ratiocination as to the particular subject to which the partial insanity relates." *Bohler v. Hicks*, 120 Ga. 800, 802-803 (48 SE 306) (1904). "[Monomania] is not the result of any conclusion; the person does not arrive at his conviction because of any attempt either at reasoning or investigation." *Brumbelow v. Hopkins*, 197 Ga. 247, 249 (1) (29 SE2d 42) (1944).

"The person so affected is subject to hallucinations and delusions, and is impressed with the reality of events which have

never occurred and things which do not exist, and his actions are more or less in conformity with his belief in these particulars . . . [.] It is not every delusion which will deprive one of testamentary capacity. It must be an insane delusion. A definition of such a delusion which has been approved by this court is that it exists wherever a person conceives something extravagant to exist which has no existence whatever, and he is incapable of being permanently reasoned out of that conception. [Cit.] The subject-matter of the insane delusion must have no foundation in fact, and must spring from a diseased condition of mind. . . ."

*English v. Shivers*, 219 Ga. 515, 518-519 (133 SE2d 867) (1963). A showing of hallucinations or insane delusions is essential to proving monomania. *Whitfield v. Pitts*, 205 Ga. 259, 272 (53 SE2d 549) (1949).

Monomania is distinguished from ill will, bad judgment, animosity, prejudice, erroneous conclusions from facts, illogical views, and other conditions of mind which can be co-existent with sanity. *Russell v. Fulton Nat. Bank*, 248 Ga. 421 (1) (283 SE2d 879) (1981).

An insane delusion does not mean a mistaken conclusion from a given state of facts, nor a mistaken belief as to the existence of facts. An erroneous conclusion of a sane person may arise from incorrect reasoning or from a deduction from information which he supposed to be correct.

*Thornton v. Hulme*, 218 Ga. 480, 485 (128 SE2d 744) (1962). Hence, we have recognized that

"[i]f the testator undertakes to make an investigation and arrives at the conclusion that a certain state of facts exists which in point of fact does not exist, such conclusion may be attributable either to a mistake in judgment or a mistake of fact, and will not be evidence of insanity . . . [.]"

*Hammett v. Reynolds*, 243 Ga. 669, 671 (256 SE2d 354) (1979).

Where a person is induced by false evidence or by false statements to believe a fact to exist, or where, in consequence of his faith in evidence which is true, but which is wholly insufficient to prove the truth of what he believes, he believes a fact to exist which in reality has no existence, his belief may show want of discernment, or that he lacks ordinary power of discrimination, and is consequently easily duped, but not that his mind is unsound.

(Punctuation omitted.) *Brumbelow v. Hopkins,* supra at 249.

Applying these principles to the evidence adduced in the case at bar and construing that evidence most strongly in favor of the caveator, as the respondent on the motion for directed verdict, the evidence showed that the caveator was raised by the testator and his first wife, Cora Boney, who died in May 1974 after some 50 years of marriage. Three months later the testator married the propounder, his first cousin once removed and eight years his junior. Up until November 1979, the caveator, who lived with his family in the Atlanta area, frequently visited the testator, a Telfair County resident, and regularly attended the Boney Family reunions.

In November 1979, the caveator, his wife, and two younger children drove from Atlanta to attend a reunion, but arrived too late to eat at the clubhouse where the first part of the reunion was held. They went to the testator's house where the propounder and the testator's sister had brought some food from the clubhouse to make available to the caveator and another late-arriving relative. Because the caveator's children were hungry, they sat down at the dining room table. It is uncontested, however, that the children did not eat because the caveator's wife decided to leave with the children to dine at another relative's house. The family had arrived and the wife and children had departed the testator's house within a 30-minute period.

The jury was authorized to believe the caveator's evidence that his family's departure was not of an insulting nature and that his family routinely chose to eat elsewhere when visiting the testator. The jury was also authorized to believe the caveator's evidence that on the following day, when the caveator asked the testator about his cool manner during the reunion, the testator asserted angrily that the caveator's wife had departed the previous evening because she refused to eat food prepared by the propounder and that the testator considered it an insult to the propounder and himself. The caveator testified that his wife spoke to the testator and directly denied that she had refused to eat the food or insulted the propounder. The testator then cursed at the caveator's wife and threatened to slap her. None of the witnesses at trial, including life-long friends, had ever known the testator to have cursed or threatened a woman. When the caveator defended his wife, the testator ordered him and his family out of the house. It is uncontroverted that in the 12 years following this incident until the testator's death, the caveator and his family had only minimal contact with the testator.

While the jury was authorized to find that the testator erroneously concluded that the departure was an insult, given the foundation in fact for the conclusion (food prepared by the propounder had been available; the caveator's wife and children did leave without eating), the testator's belief that the departure was an insult to the pro-

pounder was, at most, " 'the result of an erroneous conclusion based upon an illogical deduction drawn from facts as they really exist,' "[1] *English v. Shivers*, supra at 520, which does not constitute the insane delusion that is necessary for monomania. Under the facts presented in this case, the jury was not authorized to set aside the testator's will on the ground of monomania and thus the verdict cannot be sustained on this ground. Compare *Powell v. Thigpen*, 230 Ga. 760 (199 SE2d 251) (1973) (although evidence adduced may have explained testator's extreme dislike for caveator, other evidence, such as testator's belief that caveator had "cast a spell" on him, was sufficient to raise question for jury as to monomania).

The trial court erred by denying the propounder's motion for a directed verdict. See generally *Hammett v. Reynolds*, supra.

2. Because the evidence demanded a verdict in favor of the propounder of the will, the case need not be remanded to the trial court for a new trial. Accordingly, the caveator's cross-appeal is dismissed as moot.

*Judgment reversed in Case No. S95A1428. Appeal dismissed in Case No. S95X1429. All the Justices concur.*

CARLEY, Justice, concurring.

Our holding that the trial court erred in denying the propounder's motion for directed verdict is dispositive of all issues raised in the appeal and in the caveator's cross-appeal. This is so because the *only* basis for the caveat was the alleged monomania of the testator. Except for the allegation of monomania, caveator admitted the testamentary capacity of the testator. Because our reversal of the denial of the directed verdict leaves nothing to be retried, we need not consider the propounder's additional enumeration of error complaining of the trial court's admission of evidence concerning an earlier will. Likewise our holding deprives the "defensive" cross-appeal of any viability. The caveator's cross-appeal asserted that in the event of the reversal of the judgment in his favor, this Court should determine that the admission of certain evidence was erroneous so that such evidence would be excluded on retrial. However,

> reversal by an appellate court of the trial court's denial of a motion for a directed verdict can mean only that a directed verdict should have been and *should be* entered. This is tantamount to a reversal with direction, and thus no retrial can

---

[1] As to the reason why the testator believed the departure to have been an insult, we note the caveator's testimony that he thought the propounder was "instrumental in telling [the testator] some things that possibly were not so, that created the situation that we had in 1979."

be held on those issues.

(Emphasis in original.) *Kirkland v. Southern Discount Co.*, 187 Ga. App. 453, 454 (1) (370 SE2d 640) (1988). Thus, even if the trial court erred as alleged in the cross-appeal, it is not reviewable because the propounder is entitled to a judgment as a matter of law and, thus, there will be no new trial.

I am authorized to state that Justice Sears joins in this concurrence.

DECIDED OCTOBER 16, 1995 —
RECONSIDERATION DENIED NOVEMBER 9, 1995.

*Newton, Smith, Durden, Kaufold & Rice, Wilson R. Smith,* for appellant.
*Gandy, Rice & Sundberg, L. Spencer Gandy, Jr.,* for appellee.